SPLIT FAMILY SUPPORT
GROUP, Plaintiff,

v.

Ernest T. MORAN, in his official capacity as Bureau of Indian Affairs Superintendent for the Flathead Agency, Stanley Speaks, in his official capacity as the Northwest Regional Director for the Bureau of Indian Affairs, Neil McCaleb in his official capacity as the Assistant Secretary—Indian Affairs for the United States Department of the Interior, and Gale Norton, in her official capacity as Secretary of the Department of the Interior, Defendants.

No. CV 02–166–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Nov. 8, 2002.

Stephen Brown, Charles McNeil, Katie, DeSoto, Garlington, Lohn & Robinson, Missoula, MT, for Split Family Support Group.

Mark Steger Smith, Asst. U.S. Atty., for U.S.

Patrick Smith, Missoula, MT, for Confederated Salish and Kootenai Tribes.

Howard Toole, Missoula, MT, for Flathead Indian Reservation Defense Organization.

## ORDER

MOLLOY, Chief Judge.

The Plaintiff, Split Family Support Group ("SFSG"), petitioned the Bureau of Indian Affairs to hold a Secretarial election on proposed amendments to the Constitution of the Confederated Salish and Kootenai Tribes of the Flathead Reservation. SFSG filed a Complaint alleging that Defendants, through their acts and failures to act, have caused SFSG injury by failing

to meet their statutory duties to conduct an election as required by the Indian Reorganization Act ("IRA"). 25 U.S.C. § 476(c). The allegations in the Complaint have been verified by two members of Plaintiff's group.

On October 23, 2002, the Split Family Group filed motions for a temporary restraining order and a writ of mandamus in this Court. The temporary restraining order was issued on October 24, prohibiting the Bureau of Indian Affairs (BIA) from making any further preparations specifically geared to the Secretarial Election it has scheduled for January 18, 2003, and forbidding it from holding that election. On November 1, 2002, oral arguments were heard in Missoula on the motion for a writ of mandamus.

A. The Test for Preliminary Injunction

Rule 81(b) of the Federal Rules of Civil Procedure abolishes the writ of mandamus in district courts. Appropriate relief is still available but must be granted through some other motion or petition. At oral argument, counsel for both parties agreed that Plaintiff's motion for mandamus would be construed as a motion for a mandatory preliminary injunction under Rule 65(b).[1]

The Ninth Circuit recognizes two standards for the issuance of a preliminary injunction. *Stanley v. University of Southern California,* 13 F.3d 1313, 1319 (9th Cir.1994). Under one standard, an injunction may issue if (1) plaintiff shows a substantial likelihood of prevailing on the merits; (2) plaintiff is subject to irreparable injury if relief is not granted; (3) plaintiff would suffer harm greater than any suffered by the party subject to restraint; and (4) the public interest is better served by the issuance of the injunction than by its denial. *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993). Under the other standard, an injunction may issue if plaintiff demonstrates either (1) a combination of probability of success on the merits and the possibility of irreparable injury, or, (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Id.* These alternate standards are not separate tests but should be viewed as "the outer reaches of a single continuum." *Id.* Overall, the task of the court is to "balance the equities in the exercise of its discretion." *Id.* Where there is a high probability of success on the merits, the moving party need not show as great a potential damage, but rather, just that damage to the moving party is greater than damage to the nonmovant. *Topanga Press, Inc. v. City of Los Angeles* 989 F.2d 1524, 1528 (9th Cir.1993).

In some cases, the moving party must carry an even heavier burden in order to obtain a preliminary injunction. Mandatory injunctions, as opposed to prohibitory injunctions, change the status quo and require a positive action on the part of the defendant. *Meghrig v. KFC Western,* 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). The factors for con-

---

1. At oral argument, plaintiff's counsel argued that the standards for mandamus and preliminary injunction were substantially the same. However, the test for issuing a writ of mandamus is clear, simple, and different from that for preliminary injunction. The test is based in the common law, as defined in *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986) (internal citations omitted):

> Mandamus relief is only available to compel an officer of the United States to perform a duty if (1) the plaintiff's claim is clear and certain; (2) the duty of the officer "is ministerial and so plainly prescribed as to be free from doubt"... and (3) no other adequate remedy is available.

The end result in this situation may have been the same, but the legal standard is clearly different.

sideration are the same, but a mandatory injunction is subject to a higher scrutiny. *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir.1993). Courts should be "extremely cautious about issuing a preliminary injunction." *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994) (quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.1984).) "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.*, at 1320 (internal quotations omitted.)

1. Likelihood of Success on the Merits

■ A preliminary injunction cannot be issued unless the Split Family Support Group is likely to succeed on the merits of their claim. Here, the issue is one of statutory interpretation. 25 U.S.C. § 476(c) reads:

**Election procedure; technical assistance; review of proposals; notification of contrary-to-applicable law findings**

(1) The Secretary shall call and hold an election as required by subsection (a) of this section—

(A) within one hundred and eighty days after the receipt of a tribal request for an election to ratify a proposed constitution and bylaws, or to revoke such constitution and bylaws; or

(B) *within ninety days after receipt of a tribal request for election* to ratify an amendment to the constitution and bylaws. (Emphasis added.)

Split Family Support Group reads this section to require that, after receiving the Group's petition, the Secretary had 90 days within which to call *and hold* the election. This 90 days, under the Group's interpretation, would have expired on October 24, and the Secretary's failure to hold the election until January 18, 2003, is a violation of the law. To read the statute this way means the word "tribal" must be ignored in § 476(c)(1)(B).

Plaintiff never directly addresses the ambiguity of "tribal request" in § 476. Attached to the Plaintiff's motion are Exhibits 8 and 9, BIA directives explaining that the statute requires the election to be held within 90 days of the tribal request. The earlier of these two documents, Exh. 9, specifically identifies a petition in accordance with 25 C.F.R. 81.5(b)as a tribal request. However, 25 CFR 81.5(b) specifically deals with the petitions to call an election to adopt a constitution and bylaws. The section does not apply to a petition to amend an extant constitution. Plaintiff's Exhibit 8, a later document and a clarification, does not define the term either way. Finally, Exhibit 5 is a letter from the BIA's Portland office that claims that the 90 day period does apply in the particular situation of the Split Family Support Group's petition.

The answer to this statutory conundrum turns on the meaning of "tribal request." While the C.F.R. and BIA guidance confuse the issue, the statute as enacted by Congress controls. The meaning of "tribal request" is not defined in the statute as codified in 25 U.S.C. § 476(c). However, P.L. 100–581 § 102(2), which is the law codified as § 476, reads " 'appropriate tribal request' means receipt in the Area Office of the BIA having administrative jurisdiction over the requesting tribe, of a duly enacted tribal resolution requesting a secretarial election." I understand 25 U.S.C. § 476(c), by its plain language as illuminated by the Public Law, to mean a resolution passed by an official tribal body, not a petition signed by tribal members. Consequently, there is little likelihood that Plaintiff would win on the merits of the statutory claim.

### 2. Irreparable Harm

██ The second element to be weighed in the test for preliminary injunction is whether the movant would be irreparably harmed by denying the injunction. In their request for the TRO, the Split Family Support Group claimed that having the election in January would prevent some voters from attending, either because the winter roads are treacherous or people leave the Reservation or surrounding areas for the winter. At oral argument, Plaintiff presented the testimony of Regina Parot and Thomas Smith, both of whom attested to the difficulties that *might* arise if the election proceeds in January. Also, counsel for the Split Family Support Group argued that the violation of the law alone, on the part of the BIA, caused irreparable harm per se, and that every passing day causes more harm by continued violations of the law.

In response, Defendants pointed out that the risks of winter weather are already upon us, and that holding the election when the Group asks—in thirty days or so—does not seriously diminish whatever potential harms exist due to the weather. There may be some members who would not be available to vote in mid-January who could vote at the beginning of December. But there is no significant evidence of irreparable harm if the election proceeds in January. As the Defendants point out, the harms identified by SFSG could equally be avoided by moving the election further into the spring.

### 3. Balancing the Harms

██ The final considerations in the preliminary injunction test are to balance the harms to the various parties and to the public interest. At oral argument, Defendants presented the testimony of Ernest Moran that scrambling to hold the election in 30 days would cause hardship to the BIA. The BIA needs to get the voter pamphlets printed and mailed and get the voter rolls straightened out, tasks made more challenging now since the BIA is currently functioning, as the entire federal government is, on a reduced budget caused by a continuing resolution for appropriations and budget.

More importantly, as argued persuasively by the intervening Confederated Salish and Kootenai Tribes, the vote on this constitutional amendment is important for the future of the tribe. The Tribes are studying what the demographic effect of such an amendment will be on tribal enrollment, and that study will not be completed until the end of November at the earliest. The Confederated Salish and Kootenai Tribe is itself split on the question. Pushing the BIA into holding the election now could have a profound impact on the level of voter education and information. There is no compelling reason to force tribal members to vote in the dark, when a short delay will provide much greater illumination.

### B. Conclusion

Sufficient harm has not been demonstrated for a preliminary injunction. If a movant is certain to win on the merits at trial, very little harm needs to be shown. In this case, however, certainty to win on the merits is far from clear, and there is almost no demonstrable harm. On the other hand, rushing this election, merely to have it held at most six weeks earlier, risks a needlessly uninformed electorate, greater expense, possibility of mistake in creating the election roll and preparing the ballot, and the problem of budget priority. Therefore,

IT IS HEREBY ORDERED that Plaintiff's motion for a preliminary injunction is DENIED, and the temporary restraining order, issued on October 24, 2002, and renewed on November 1, 2002, is DISSOLVED.

The Clerk is directed to notify the parties of the entry of this Order. A preliminary pretrial conference will be scheduled by separate Order to set a trial date for hearing the merits.