**INTERNATIONAL JENSEN, INCORPORATED, Plaintiff–Appellant,**

**v.**

**METROSOUND U.S.A., INC., dba L.A. Sound, Defendant–Appellee.**

No. 92–55490.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1993.

Decided Sept. 13, 1993.

Karen Pszanka–Layng (Robert E. Browne with her on the brief), Vedder, Price, Kaufman & Kammholz, Chicago, IL, for plaintiff-appellant.

Patricia S. Smart, Smart & Bostjancich, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for defendant-appellee.

Before: WOOD, Jr.,* REINHARDT, and RYMER, Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge:

A manufacturer seeks a preliminary injunction barring a rival company from producing similar looking audio speakers. The district court denied the preliminary injunction and, for the reasons stated below, we affirm.

## I. BACKGROUND

International Jensen, Inc., the Appellant, manufactures car and truck loudspeakers. The speakers are covered by a detachable metallic grille; Jensen's name appears in a rectangular box on the lower portion of the grille. Removing the grille exposes the speaker cone. The cone is attached to the speaker housing, the box which encloses the speaker, by means of a "surround." Since the early 1970s Jensen has colored the surround in cyan blue. The company describes this package as being the "Blue Surround trademark and trade dress." The company, for the first time, filed federal applications for trademark registration of the "Blue Sur-

round" in April 1990. The application has not yet been approved.

Late in 1989, Metrosound U.S.A. Inc., the Appellee, introduced a new line of car speakers under the L.A. SOUND label. In its own words, Metrosound tried to link its products with the "fun Southern California lifestyle, including activities associated with the beach and ocean." To that end, the company used a blue wave as part of its L.A. SOUND logo, a surfer figure in its advertising and promotional materials, and a blue surround for its speaker.

Jensen became aware of Metrosound's new product at the 1990 International Summer Consumer Electronics Show in Chicago, Illinois, and subsequently filed a motion for a preliminary injunction against Metrosound in the United States District Court for the Northern District of Illinois in January 1991. Jensen alleged violations of the Lanham Trade–Mark Act ("Lanham Act"), 15 U.S.C. § 1051 et seq., the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois Anti–Dilution Statute, 765 ILCS 1035/15. The court transferred the case to the Central District of California.

Judge Waters heard oral arguments in November 1991 and denied the motion for a preliminary injunction in March 1992. The court found that due to functional constraints, most car loudspeakers are generally similar in appearance. Surrounds necessarily mirror the size and shape of the speaker cone and as a result are oval or circular. The court found many companies at one time or another have sold speakers with colored surrounds, including blue surrounds. Jensen was found to have not given any indication on its speakers or promotional materials that it specifically claimed trademark rights in the use of a blue surround. The company also failed to file suit against numerous manufacturers who also sold speakers with blue surrounds.

## II. DISCUSSION

On appeal, Jensen claims the district court erred by holding: (1) Jensen failed to estab-

* The Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

lish a reasonable likelihood of success on the merits; (2) the balance of hardships favored Metrosound; and (3) a preliminary injunction to Jensen is not in the public interest.

## A. Standard of Review

We will not set aside a trial court's decision in granting or denying a preliminary injunction unless the court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir.1989); *Regents of Univ. of Cal. v. American Broadcasting Cos.*, 747 F.2d 511, 515 (9th Cir.1984). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir.1969) (citation omitted). We will not say the district court abused its discretion in denying a preliminary injunction where there is great doubt as to the validity of the trademark. *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964).

## B. Preliminary Injunction

Traditionally, a court may issue a preliminary injunction if it determines: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and, depending on the nature of the case, (4) the public interest favors granting relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.1987). This court has also adopted an "alternative standard" under which the moving party may meet its burden by demonstrating *either*: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Id.* The alternative standards "are not separate tests but the outer reaches of a single continuum." *Regents of Univ. of Cal.*, 747 F.2d at 515. Essentially, the trial court must balance the equities in the exercise of its discretion. *Id.*

Judge Waters found that under the traditional and alternative standards, Jensen failed to meet its burden of demonstrating it was entitled to a preliminary injunction.

## C. Probability of Success on the Merits

Jensen argues the district court erred in concluding it was not likely to prevail on the merits of its claims. Those claims include both federal and state law actions; we will address each separately.

### 1. Lanham Act

In the Lanham Act, Congress defined the word "trademark" as being a mark that identified a product's source and distinguished the product from others. The definition now reads as follows:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof—
>
> (1) used by a person, or
>
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
>
> to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127.

In contrast to a trademark, "trade dress" refers to the "total image of a product" and may include features such as size, shape, color, color combinations, texture or graphics. *Vision Sports*, 888 F.2d at 613. A seller's adoption of a trademark or trade dress that is confusingly similar to a competitor's constitutes unfair competition and is actionable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985).

Jensen maintains the blue surround is its unregistered trademark and argues that the "blue surround in combination with a black case, a black speaker cone, a dark metallic grille, and the product name in a rectangular box on the lower portion of the grille is fully

protectable as a trade dress." Jensen claims Metrosound has infringed on both its unregistered trademark and trade dress by production and marketing of the L.A. Sound speakers.

While the scope of trade dress has been said to exceed that of trademark, the analysis for trade dress and an *unregistered* trademark under section 43(a) of the Lanham Act is very similar. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992) (section 43(a) "provides no basis for distinguishing between trademark and trade dress"); *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1506 (9th Cir.1987) (section 43(a) provides unregistered trademark in product's trade dress); *Vaughan Mfg. Co. v. Brikam Int'l Inc.,* 814 F.2d 346, 348 n. 2 (7th Cir.1987) (courts look to trademark cases for guidance on trade dress and vice versa).

■ Under either theory Jensen must show the "Blue Surround trademark and trade dress": (1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with Metrosound's products by members of the consuming public. *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758; *HWE Inc. v. JB Research, Inc.,* 993 F.2d 694, 696 (9th Cir.1993); *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1381 (9th Cir.1987). We review the district court's factual determinations on each of these three issues for clear error. *Ocean Garden, Inc. v. Marktrade Co.,* 953 F.2d 500, 509 (9th Cir. 1991); *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355–56 (9th Cir.1985) (en banc).

a. Functionality

■ A trademark or trade dress is functional if it is essential to the product's use or purpose or if it affects the cost or quality of the article. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 842 (9th Cir.1987); *see also Vaughan Mfg. Co.,* 814 F.2d at 349 (functional feature is one competitors find necessary to incorporate in order to compete effectively). In determining functionality, a product's trade dress must be analyzed as a whole. *First Brands,* 809 F.2d at 1381. Our inquiry is not directed at whether the individual elements are functional but whether the whole collection of elements taken together are functional. *Fuddruckers, Inc.,* 826 F.2d at 842.

■ Factors to be considered include: (1) whether a particular design yields a utilitarian advantage; (2) whether alternative designs are available in order to avoid hindering competition; and (3) whether the design achieves economies in manufacture or use. *In re Owens–Corning Fiberglas Corp.,* 774 F.2d 1116, 1121 (Fed.Cir.1985). The district court found, and the parties agree, that the shapes and sizes of car loudspeakers and their components, including the surrounds, are functional. The parties disagree as to whether the color on the surround and Jensen's trade dress as a whole are functional.

We have recognized that a color may be functional. In *First Brands* the manufacturer of Prestone brand antifreeze sought a preliminary injunction preventing other manufacturers from selling their antifreeze in yellow-colored plastic jugs. This court recognized the "color depletion" theory, noting there are a limited number of colors in the palette. Allowing Prestone to protect yellow as its exclusive color would deplete the palette. 809 F.2d at 1382. If all colors were trademarked, new competitors would be barred from entering the market. In this sense, the color yellow was functional.

Similarly, the district court found there was an industry-wide practice of coloring speaker surrounds. Several witnesses testified that consumers desire speakers that both sound and look good and that in response many different manufacturers produce speakers with colored surrounds. Granting Jensen a trademark on blue surrounds, held the court, would improperly deprive Jensen's competitors of the use of a primary color. Under these circumstances, the court found the use of color on a surround to be functional.

It is open to question whether the color depletion theory which supports the district court's finding and our holding in *First Brands* is still persuasive. Our colleagues in the Eighth Circuit believe it is not. In *Mas-*

*ter Distributors, Inc. v. Pako Corp.*, 986 F.2d 219 (8th Cir.1993), the Eighth Circuit recently stated that while allowing a manufacturer to monopolize a color in all of its shades would indeed deplete the color choices available to other market participants, allowing a manufacturer to monopolize a specific shade of color would not.

In other words, a manufacturer cannot claim all shades of red, i.e. the hues between purple and orange, but a manufacturer could claim cadmium red, for instance, as a trademark. *Id.* at 223. The court noted that there are hundreds of different colors available to manufacturers; one classification scheme places the number of colors at more than 1,200. *Id.* The court also stated that deciding whether one manufacturer's color trademark infringes another's will be no more difficult than distinguishing whether slogans, symbols, numbers, or words are confusingly similar. *Id.*

While the Eighth Circuit will allow color to be trademarked, the court insists the manufacturer satisfy "all the normal requirements for trademark protection, including secondary meaning." *Id.* These requirements, plus the large number of available colors, mean competitors will not be barred from the market:

> [A] manufacturer's mere use of a certain color will not automatically grant it proprietary rights—the manufacturer must establish all the normal requirements for trademark protection, including secondary meaning. Until secondary meaning has been established in every distinguishable shade of color and in no color at all, a highly improbable situation, there will always be an option available to a new market entrant.

*Id. See generally* Nancy L. Clarke, Note, *Issues in the Federal Registration of Flavors as Trademarks for Pharmaceutical Products*, 1993 U.Ill.L.Rev. 105, 108–09 (noting trend extending trademark protection to colors).

We need not decide whether to abandon the color depletion theory. Nor need we determine whether the district court's findings as to functionality were correct. As we shall discuss, the district court's decision to deny the preliminary injunction may be affirmed on other grounds.

### b. Distinctiveness/Secondary Meaning

■ Assuming a trademark or trade dress is not functional, the plaintiff must still show that the mark or dress is either distinctive or has a secondary meaning. These are alternate standards: If a mark or dress is inherently distinctive it need not be shown to also have a secondary meaning. *Two Pesos, —— U.S. at ——*, 112 S.Ct. at 2757; *Paddington Corp. v. Attiki Importers & Distribs.*, 996 F.2d 577, 582 (2d Cir.1993); *HWE, Inc.*, 993 F.2d at 696; *Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F.Supp. 980, 987–88 (D.Ariz. 1992).

■ A mark or dress is distinctive when it identifies the particular source of the product or distinguishes it from other products. *Cf. Lisa Frank*, 799 F.Supp. at 988 (including arbitrary features that do not describe product or assist in effective packaging makes dress inherently distinctive). Correspondingly, a product's trademark or trade dress acquires a secondary meaning when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself. *Levi Strauss & Co.*, 778 F.2d at 1354. The difference between the two concepts may be thought of this way: A mark or trade dress may be inherently distinctive whereas secondary meaning is a learned association, an "acquired distinctiveness." *Two Pesos, —— U.S. at ——*, 112 S.Ct. at 2757.

■ While evidence of a manufacturer's sales, advertising and promotional activities may be relevant in determining secondary meaning, the true test of secondary meaning is the effectiveness of this effort to create it. *First Brands*, 809 F.2d at 1383. Prestone, for instance, perhaps could have created a secondary meaning by urging consumers to look for the "familiar yellow jug." *Id.* However, Prestone's extensive advertising campaign had failed to establish a secondary meaning.

Judge Waters found Jensen also had failed to establish a secondary meaning for its trade dress: "This conclusion is based upon

the evidence presented to this Court relating to consumer association, the degree and manner of advertising, the length and manner of use, and the lack of exclusivity of use of the claimed trademark." The district court did not explicitly address the question of whether Jensen's "Blue Surround trademark and trade dress" was distinctive, nor did it mention the Supreme Court's *Two Pesos* decision. While this would have been helpful, it matters little because we base our decision to affirm the district court's denial of a preliminary injunction on its finding regarding likelihood of confusion.

### c. Likelihood of Confusion

■ Regardless of whether a trademark or trade dress is non-functional and distinctive, the plaintiff must still show the defendant's use of the same or similar trademark or trade dress is likely to confuse consumers. *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758; *Sardi's Restaurant Corp. v. Sardie,* 755 F.2d 719, 723 (9th Cir.1985); *Lisa Frank,* 799 F.Supp. at 993. This is "the core element of trademark infringement." *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir.1992).

■ A likelihood of confusion exists when consumers "are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Metro Publishing, Ltd. v. San Jose Mercury News,* 987 F.2d 637, 640 (9th Cir.1993) (citation omitted). Although this court has enumerated eight separate factors to consider in determining whether confusion between related goods is likely, *see AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979), the district court noted our statement in *First Brands* that "for the limited purpose of a preliminary injunction motion, the differences in the labels are sufficient for a finding of no likelihood of confusion." 809 F.2d at 1384; *accord Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 526 (9th Cir.1984).

■ There was no likelihood of confusion in this case, the district court found: "[W]hen the overall appearance of the parties' speaker products and packages are con-

sidered, the 'total effect' is distinctly different, obviating any likelihood of confusion...." The court also found that because many other manufacturers used colored surrounds, purchasers were not likely to be confused as to the source of the speakers. *See Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1449 (9th Cir. 1988) (where there are many similar marks customers learn to carefully pick out one from the other).

Jensen has not persuaded us that the district court's finding regarding the likelihood of trademark confusion is clearly erroneous. Moreover, we are satisfied the district court assessed "the total effect of the defendant's product and package on the eye and mind of an ordinary purchaser" for likelihood of trade dress confusion. *First Brands,* 809 F.2d at 1383–84. Nor do we accept Jensen's arguments that the court improperly considered some evidence but failed to consider other evidence. Given the court's finding, Jensen is unable to show it would likely prevail on the merits of its federal claims. We may therefore affirm the court's decision to deny Jensen a preliminary injunction based on Jensen's federal claims.

Next we must consider whether the district court improperly refused to issue an injunction based on Jensen's pendent state law claims. Jensen first saw Metrosound's L.A. Sound products displayed in Chicago and charged Metrosound with violating the Illinois Uniform Deceptive Trade Practices Act and the Illinois Anti–Dilution Statute.

### 2. Illinois Uniform Deceptive Trade Practices Act

Under the Illinois Uniform Deceptive Trade Practices Act, a person engages in a deceptive trade practice when he or she "passes off goods or services as those of another" or "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of those goods or services" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2; *Robb Container Corp. v. Sho–Me Co.,* 566 F.Supp. 1143, 1153 (N.D.Ill.

1983). *See generally Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 611 (7th Cir.1986) (discussing concept of "passing off"). The Act is a codification of the common law of unfair competition. *Brooks v. Midas–Int'l Corp.,* 47 Ill.App.3d 266, 5 Ill. Dec. 492, 498, 361 N.E.2d 815, 821 (1977). Injunctive relief is available under the Act to those persons likely to be damaged by another's deceptive trade practice. 815 ILCS 510/3.

■ The term "likelihood of confusion" has "the same meaning under the deceptive Trade Practices Act as it has in trademark infringement cases." *M–F–G Corp. v. EMRA Corp.,* 626 F.Supp. 699, 707 (N.D.Ill. 1985), *aff'd* 817 F.2d 410 (7th Cir.1987). The test for trademark infringement "is the likelihood of confusion of ordinary purchasers purchasing in the ordinary manner." *Robb Container,* 566 F.Supp. at 1153. This standard requires only that sellers identify their products so that "purchasers exercising ordinary case to discover whose products they are buying will know the truth and not become confused or mistaken." *Hooker v. Columbia Pictures Indus., Inc.,* 551 F.Supp. 1060, 1064 (N.D.Ill.1982). This means there must be a likelihood and not merely a possibility of confusion. *Id.*

The district court found there was no likelihood of confusion between Jensen's and Metrosound's speakers. This court reviews questions of state law *de novo* and the factual conclusions of likelihood of confusion under the clearly erroneous standard. *Levi Strauss & Co.,* 778 F.2d at 1361. We cannot say the court's finding is clearly erroneous. Although the court could have made its conclusion explicit, it is clear that based upon its findings an injunction was not warranted under the Illinois Deceptive Trade Practices Act.

*3. Illinois Anti–Dilution Statute*

■ Trademark dilution is not a cause of action under the Lanham Act, but it is under Illinois law. *Eveready Battery Co. v. Adolph Coors Co.,* 765 F.Supp. 440, 451 (N.D.Ill. 1991). The Illinois Anti–Dilution Statute "provides additional protection to trademark owners by preventing the disparagement or erosion of their marks through use by third parties on non-confusing, non-competing products." *Id.*

Under the Illinois statute, a party using a "mark, trade name, label or form of advertisement" may obtain an injunction against a subsequent user where "there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." 765 ILCS 1035/15.

■ An injunction must be granted where the first user can show the mark is distinctive and the subsequent user's application of that mark dilutes its distinctiveness. *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Celozzi–Ettelson Chevrolet, Inc.,* 855 F.2d 480, 482 (7th Cir.1988); *Hyatt Corp. v. Hyatt Legal Servs.,* 736 F.2d 1153, 1157 (7th Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984). Factors used to determine the distinctiveness include whether the mark is arbitrary, the length of time the first user has employed the mark, the scope of the first user's advertising and promotions, the nature and extent of the first user's business, and the scope of the first user's reputation. *Hyatt,* 736 F.2d at 1158. To determine whether the subsequent user has diluted the first user's mark, the court looks at the similarity between the marks used by the parties and the extent of the marketing effort by the subsequent user. *Id.*

■ In the proceedings below, the district court stated that an action for dilution will not lie under this statute where the parties are competitors. This statement is literally incorrect; as the statute clearly indicates, an action for dilution applies whether or not the parties are competitors. *See Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 709 (7th Cir.1972); *Soft Sheen Prods., Inc. v. Revlon, Inc.,* 675 F.Supp. 408, 416 (N.D.Ill.1987). Illinois courts, however, have crafted an exception to the statute: " '[W]here the parties are in competition and the plaintiff could not obtain relief under the

traditional laws of infringement and unfair competition, he will not be able to obtain relief under the Anti–Dilution Statute.'" *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 380 (7th Cir.1984) (quoting *Filter Dynamics Int'l, Inc. v. Astron Battery, Inc.*, 19 Ill.App.3d 299, 311 N.E.2d 386, 398–99 (1974)); *G. Heileman Brewing Co. v. Anheuser–Busch, Inc.*, 676 F.Supp. 1436, 1472 (E.D.Wis.1987), *aff'd*, 873 F.2d 985 (7th Cir.1989).

Based on the district court's findings, the Illinois statute does not apply. Jensen and Metrosound are competitors and Jensen is not entitled at this stage of the proceedings to relief for trademark or trade dress infringement.

### D. Irreparable Injury

In trademark cases, once the plaintiff establishes a likelihood of confusion between the plaintiff's mark and the defendant's, it is ordinarily presumed the plaintiff will suffer irreparable harm if injunctive relief is not granted. *Vision Sports*, 888 F.2d at 612 n. 3. The district court found Jensen failed to establish a likelihood of confusion and thus there was no presumption of irreparable harm. We cannot say the court clearly erred.

### E. Balance of Hardships

In evaluating the balance of hardships a court must consider the impact granting or denying a motion for a preliminary injunction will have on the respective enterprises. Thus the relative size and strength of each enterprise may be pertinent to this inquiry. *Sardi's Restaurant*, 755 F.2d at 726.

Given that Metrosound is much smaller and younger than Jensen and given that Jensen failed to vigorously protect its trademark claim, the court found the balance did not tip in Jensen's favor. We shall not disturb the court's judgment.

### F. The Public Interest

Finding that there was no likelihood of confusion among consumers, the court felt there was no public interest in granting the injunction. To the contrary, the court viewed an injunction as depriving consumers of a choice of products. Accepting the district court's finding regarding the likelihood of confusion as not clearly erroneous, we have no reason to overturn its decision regarding the public interest.

### G. Alternative Test

The district court also did not clearly err in determining that Jensen had failed to meet its burden of showing that it was entitled to an injunction under our alternate test. While there may be serious questions going to the merits, the balance of hardships does not tip at all, let alone sharply, in Jensen's favor. As noted earlier, Jensen has not shown probable success on the merits; thus a showing of the possibility of irreparable injury would be insufficient.

### III. CONCLUSION

Based on our review of the record, we cannot say the district court clearly erred in denying Jensen a preliminary injunction. While a trier of fact may later find Metrosound did infringe Jensen's trademark and/or trade dress, we cannot say the judge abused his discretion in denying an injunction at this stage. We therefore affirm the court's decision; each party shall bear its own costs.

AFFIRMED.