98 F.3d 1358
 40 U.S.P.Q.2d 1939
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SUNBURST PRODUCTS, INC. d/b/a Freestyle U.S.A.,
Plaintiff/Cross-Appellant,
v.
CYRK INTERNATIONAL, Defendant-Appellant,
and
Prosperous Enterprises (Taiwan Ltd.,), Ever Win Bags Co.
Ltd. and Glorrieux Industrial Ltd., Defendants.
 Nos. 95-1091, 95-1104.
 United States Court of Appeals, Federal Circuit.
 Sept. 30, 1996.
 
 Before ARCHER, Chief Judge, NIES,* Senior Circuit Judge, and LOURIE, Circuit Judge.
 PER CURIAM.
 
 
 1
 This appeal concerns the protection of a design of a waist pouch or pack of the type worn by hikers and skiers. Sunburst Products, Inc. (Sunburst) sued Cyrk International (Cyrk) and its foreign suppliers[1] in the United States District Court for the Central District of California (Civil Action No. CV-93-6007), alleging that Cyrk's waist pack design constituted (1) infringement of U.S. Patent No. Des. 334,471, (2) use of a false designation of origin in violation of section 43(a) of the Lanham Act (codified at 15 U.S.C. § 1125(a) 1994)), and (3) unfair competition under the California Code and common law. Following a jury trial, judgment was entered by the court for Sunburst upon the return of a special verdict favorable to Sunburst. The court awarded damages in the amount of $400,000 in accordance with the jury's verdict and issued a permanent injunction against Cyrk. Cyrk seeks to have the judgment reversed. Sunburst cross appeals, claiming entitlement to additional damages and attorney fees. We agree with Cyrk that the judgment against it cannot stand as a matter of law. Sunburst's cross-appeal is dismissed as moot.
 
 I.
 BACKGROUND
 
 2
 Cyrk was selected by Philip Morris, Inc. ("PM") in the spring of 1992 to supply a variety of products for a Marlboro cigarette promotional campaign. Proof of purchase certifications on Marlboro cigarette packs could be redeemed for the products. The catalog offered products such as T-shirts, a key chain, a lighter, and a waist pack. All of the items offered were put out in the "Marlboro red" color and bore the Marlboro mark and logo.
 
 
 3
 It is undisputed that PM gave Cyrk a waist pack sold by Sunburst under its mark REAR GEAR as a sample of what it wanted for the Marlboro promotion. The Sunburst waist pack included a kidney-shaped water bottle. In response to Cyrk's concerns about possible proprietary rights in the REAR GEAR waist pack design or the kidney-shaped water bottle, PM's patent counsel investigated and reported that neither the waist pack nor the water bottle had been patented as of July 17, 1992. Cyrk then proceeded to obtain and supply PM with the promotional waist packs.
 
 
 4
 Sunburst first sued PM, a suit which was settled for $520,000. Sunburst then filed suit against Cyrk. The court dismissed Sunburst's claim for patent infringement on Cyrk's motion for summary judgment because all of the allegedly infringing conduct occurred before the issuance of Sunburst's design patent on April 6, 1993.
 
 
 5
 The ensuing trial was to a jury on the remaining counts under the Lanham Act, 15 U.S.C. § 1125, and state law.[2] At the close of all the evidence, Cyrk moved for judgment as a matter of law (JMOL) under Rule 50. Fed.R.Civ.P. 50. The trial judge sent the case to the jury without acting on the motion. In its special verdict, the jury found that the REAR GEAR waist pack design was inherently distinctive and nonfunctional; that the MARLBORO waist pack was likely to cause confusion with the REAR GEAR waist pack; but that Cyrk did not intend to pass off the MARLBORO waist pack as the Sunburst product. The jury fixed damages at $400,000 after deducting the $520,000 paid by PM. After return of the verdict, Cyrk renewed its motion for JMOL. On October 18, 1994, the trial judge accepted the jury's findings and entered judgment against Cyrk in accordance with Rule 58. Fed.R.Civ.P. 58. A final judgment was entered on November 17, 1994, terminating the case as to all parties.
 
 II.
 Sunburst's Motion to Dismiss Cyrk's Appeal
 
 6
 Before reaching the merits, we must address a procedural issue. Sunburst argues that Cyrk's appeal is improper to the extent it challenges the findings in the special verdict because Cyrk failed to file a motion for JMOL following entry of the judgment. Sunburst maintains that Cyrk's appeal must be dismissed or, if allowed, our review is limited to matters of "plain error." According to Sunburst, a renewed motion for JMOL is ineffective under Rule 50(b) if it is filed before final judgment is entered.[3] Cyrk counters that its renewed motion, filed after the verdict was returned, is timely, and the court's October 18, 1994 judgment effectively denied its motion. We agree with Cyrk. Rule 50(b)[4] states in pertinent part:
 
 
 7
 (b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
 
 
 8
 (1) if a verdict was returned:
 
 
 9
 (A) allow the judgment to stand,
 
 
 10
 (B) order a new trial, or
 
 
 11
 (C) direct entry of judgment as a matter of law; or
 
 
 12
 (2) if no verdict was returned;
 
 
 13
 (A) order a new trial, or
 
 
 14
 (B) direct entry of judgment as a matter of law.
 
 
 15
 We reject Sunburst's position that Rule 50(b) requires entry of judgment as a condition precedent to the filing of a motion for JMOL. Rule 50(b) has always specifically set only the last date for filing, not the first. Prior to its amendment in 1963, Rule 50 set the time limit for a motion for judgment notwithstanding the verdict (JNOV) at ten days measured from receipt of the verdict, a time which could well precede the judgment. The 1963 amendment to Rule 50 extended the period to not later than ten days after entry of judgment. The 1991 amendment changed the name to "judgment as a matter of law" (JMOL) replacing the use of JNOV. In 1995, while other language changes were made, the rule continued to provide for filing "no later than ten days after entry of the judgment."
 
 
 16
 With respect to the first date for a Rule 50 motion, a motion for JNOV filed before a verdict was returned would have been a senseless act. One cannot attack a verdict if none was returned. Similarly, the current rules suggest no opening date for such post-trial motion. Logically, the earliest triggering event would be the close of a jury trial related to the issue, a date clearly satisfied in this case. Apart from this consideration, no opening date for filing such motion is implied by the rules. Moreover, the Advisory Committee Notes to the 1995 amendment state that the phrase "no later than" was used so as to include "motions filed before actual entry of the judgment." Thus, the Advisory Committee clearly contemplated such motions could be made before judgment.
 
 
 17
 In sum, we conclude that a renewed Rule 50(b) motion may be made prior to entry of the final judgment. Cyrk's renewed motion for JMOL, filed after the verdict was returned, was timely and preserved for review the issue of the sufficiency of the evidence to support each finding in the special verdict.[5]
 
 III.
 DISTINCTIVENESS OF REAR GEAR PACK
 
 18
 If the mere copying of another's product were actionable, Sunburst would clearly prevail in this case. Except for the substitution of the MARLBORO logo for the REAR GEAR mark on the waist pack, the MARLBORO pack duplicates Sunburst's design. But copying a product, even another's original design, is not actionable if that is all that is involved.
 
 
 19
 The federal statute invoked here is Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides:
 
 
 20
 (a) Civil action; any person
 
 
 21
 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, ... which--
 
 
 22
 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.. .....
 
 
 23
 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 
 
 24
 The purpose of this statute is not to prevent copying product shapes but to protect a means of identification of the source of a product or service from use by another which creates a likelihood of confusion as to the source of the latter's product or service. In the words of the statute, the act imposes liability for the use of "a false designation of origin." Section 43(a) protects conventional designations of origins such as words, symbols, and devices used as trademarks or service marks.
 
 
 25
 Section 43(a) of the Lanham Act has also been interpreted to protect the distinctive trade dress of a product or service as a designation of origin and the use of the same or similar trade dress by a competitor may be a false designation. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992). In Two Pesos, the Supreme Court protected the "trade dress" of a restaurant--namely, its decor and ambiance--with the following explanation:
 
 
 26
 The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning.
 
 
 27
 Id. at 769. Likewise, under Ninth Circuit precedent, which applies here, Lanham Act section 43(a) protection is available for a product design as a trade dress if the design is either inherently distinctive or has acquired secondary meaning. International Jensen, Inc. v. Metrosound USA, Inc., 4 F.3d 819, 822-23, 28 USPQ2d 1287, 1289 (9th Cir.1993).
 
 
 28
 The finding of trade dress infringement in this case is based on the jury's specific finding that the Sunburst waist pack design was an inherently distinctive trade dress.[6] Neither party directly challenges the law as set forth in the following jury instruction:
 
 
 29
 A trade dress is inherently distinctive if its design, shape or combination of elements is so unique, unusual or unexpected in its market that one can assume without proof that it could automatically be perceived by customers as an indication of origin. Factors to be considered in determining whether a trade dress is inherently distinctive include whether the trade dress is a common basic shape or design, whether it is unique or unusual in a particular field, and whether it is a mere refinement of a commonly adopted and well known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods.
 
 
 30
 Indeed, this instruction is supported by the Court of Customs and Patent Appeals' decision in Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342, 1344, 196 USPQ 289, 291 (CCPA 1977), which articulated similar factors to be considered in determining whether a design is inherently distinctive of source. Moreover, this instruction is consistent with Ninth Circuit precedent which requires, without delineating specific factors to be considered, that an inherently distinctive design identify the particular source of the products and distinguish it from other products. International Jenson, 4 F.3d at 824, 28 USPQ2d at 1291.
 
 
 31
 Sunburst argues that the kidney shape of the REAR GEAR pouch and water bottle were "uncommon"; that double accent stitching and the quilt-like appearance were "unusual"; and that the placement of pockets, zipper pulls, belts, fabric, and buckles created a look which set Sunburst's waist pack apart in the marketplace. It also argues that its designers intended to create a design different from others on the market. Thus, Sunburst argues that the jury's finding was correct.
 
 
 32
 In contrast, Cyrk argues that the design is not "so unique, unusual or unexpected" that one can assume that the design would immediately indicate the source of the goods to consumers. Further, Cyrk argues that Sunburst failed in its offer of proof in that Sunburst presented no meaningful comparison with other products on the market or other evidence that consumers would recognize the design as an identification of source. On these points we agree with Cyrk.
 
 
 33
 To be inherently distinctive a product design must be more than novel, i.e., the first with the particular features arranged in a particular way. If novelty were the sole requirement, every new design of any product would be ipso facto protectable. What is necessary is that the design must intrinsically identify the particular source of the products. Two Pesos, 505 U.S. at 768 (stating that inherently distinctive marks identify a particular source of a product by their intrinsic nature); International Jenson, 4 F.3d at 824, 28 USPQ2d at 1291; see also Duraco Prods. Inc. v. Joy Plastic Enters. Ltd., 40 F.3d 1431, 1448, 32 USPQ2d 1724, 1738 (3d Cir.1994) (explaining that to be inherently distinctive and subject to protection under the Lanham Act, a product configuration "must be (i) unusual and memorable; (ii) conceptually separable from the product; and (iii) likely to serve primarily as a designator of origin of the product"). If the design is not so distinct as to indicate its origin, copying of that design cannot cause confusion as to origin. This is explained in the RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 16, cmt. b (1995):
 
 
 34
 b. Distinctiveness. The freedom to copy product and packaging features is limited by the law of trademarks only when the copying is likely to confuse prospective purchasers as to the source or sponsorship of goods or services. The imitation or even complete duplication of another's product or packaging will not create a risk of confusion unless some aspect of the duplicated appearance is identified with a particular source. Thus, unless a feature is distinctive ..., it is ineligible for protection as a trademark. A further restriction ... prohibits protection for functional features.... Rigorous application of the requirements of distinctiveness and nonfunctionality is necessary in order to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law.
 
 
 35
 In this case, the REAR GEAR pack is an attractive, overall user-friendly design and certain features may even be memorable. However, the features, such as the kidney-shaped bottle and two zippered front compartments, are not protectable if they are merely seen to create a type of desirable product.
 
 
 36
 Here, Sunburst presented no evidence that its design or features would inherently identify it as the source of the goods. Although there was evidence to show that its design or features may have been unique or unusual in this field, Sunburst failed to link this evidence to identification of source. It only submitted evidence that two salesmen of Sunburst packs questioned its management as to whether Sunburst made the MARLBORO packs. Their testimony is neither representative of consumers nor probative of source identification. Thus, the design was not proved to be inherently distinctive by this evidence. Likewise, Sunburst failed to present relevant evidence concerning any of the other factors identified in Seabrook and the jury instruction. As a result, the jury's finding that the Sunburst design was inherently distinctive is not supported by substantial evidence and the district court erred in not granting Cyrk's motion for judgment as a matter of law.
 
 
 37
 Because our resolution of this issue against Sunburst completely disposes of the issue of Cyrk's liability, we need not consider the asserted functionality of the design.
 
 IV.
 CONCLUSION
 
 38
 The judgment of the district court awarding damages and granting an injunction against Cyrk is reversed.
 
 REVERSED
 
 
 *
 Senior Circuit Judge Nies heard the argument in this case, but died on August 7, 1996. This case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11
 
 
 [1]
 The foreign suppliers were added by an amended complaint in March 1994
 
 
 [2]
 The parties do not raise the state law claims on appeal
 
 
 [3]
 Both parties argue as if the October 18, 1994 judgment were the final judgment in the case. However, until judgment was entered on November 17, 1994 against the foreign defendants, the judgment was not final for purposes of appeal. See Fed.R.Civ.P. 54(b). Indeed, Cyrk's notice of appeal filed November 16, 1994 was premature. However, under Rule 4(a)(2) as amended in 1993, Fed. R.App. P. 4, the notice became effective upon entry of the November 17, 1994 judgment
 
 
 [4]
 Although the relevant events transpired in 1994, we refer to the current version of Rule 50(b) of the Rules of Civil Procedure which differs from the 1994 version in only minor respects
 
 
 [5]
 Until a timely Rule 50(b) motion is ruled on, the time for appeal does not begin to run. See Fed. R.App. P. 4(a). However, a post-trial motion filed prejudgment may be ruled on prejudgment or post-judgment or by the judgment itself. See, e.g., Mosier v. Federal Reserve Bank of New York, 132 F.2d 710, 712 (2d Cir.1942) (prejudgment motion for rehearing ruled on prejudgment); Calculators Hawaii, Inc. v. Brandt, Inc., 724 F.2d 1332, 1335 (9th Cir.1982) (prejudgment Rule 52 motion ruled on post-judgment); Dunn v. Truck World, Inc., 929 F.2d 311, 313 (7th Cir.1991) (prejudgment Rule 59 motion ruled on by judgment itself). In this case, the parties do not dispute that the judgment of October 18, 1994 denied all motions. Thus, the November judgment was final for purposes of appeal, and this court has jurisdiction
 
 
 [6]
 We need not consider whether the waist pack design had acquired secondary meaning and distinctiveness based on secondary meaning. The jury did not reach this question and remand on this issue has not been sought on appeal