**WELLS FARGO BANK, N.A., and Wells Fargo Home Mortgage, Inc., Plaintiffs,**

v.

**Demetrios A. BOUTRIS, in his official capacity as Commissioner of the California Department of Corporations, Defendant.**

No. CIV.S–03–0157 GEB JFM.

United States District Court, E.D. California.

March 10, 2003.

William L. Stern, Severson and Werson, San Francisco, CA, E. Edward Bruce, Stuart C. Stock, pro hac vice, Robert A. Long, Jr, pro hac vice, Keith A. Noreika, pro hac vice, Covington and Burling, Washington, DC, for plaintiffs.

Horace G. Sneed, Office of Comptroller of Currency, Judy Lynn Hartley, State of Cal., Dept. of Corporations, Los Angeles, CA, for defendant.

## ORDER *

BURRELL, District Judge.

Plaintiffs Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo Home Mortgage, Inc. ("WFHMI") move for a preliminary injunction seeking to enjoin Defendant Demetrios Boutris, in his official capacity as the Commissioner of the California Department of Corporations ("the Commissioner") "from enforcing the California Residential Mortgage Lending Act, Cal. Fin.Code § 50002 et seq. (including § 50204(o)), California Civil Code § 2948.5, and the California Financial Lenders Law, Cal. Fin.Code § 22000 et seq., against [Wells Fargo and WFHMI]; from revoking WFHMI's licenses to do business in California under those laws; and from otherwise taking any action against WFHMI for continuing to do business in the state of California." (Pls.' Mot. for Prelim. Inj. at 1–2.) The essence of Plaintiffs' argument is that they are subject exclusively to federal regulation by the Office of the Comptroller of the Currency ("OCC") since federal banking law preempts the Commissioner's regulatory authority over federally regulated national banks. The OCC filed an amicus curiae brief in which it contends the Na-

tional Bank Act precludes the Commissioner from exercising visitorial powers over Plaintiffs. The Commissioner opposes the motion and filed an opposition to the OCC's amicus curiae brief. The Commissioner argues that because WFHMI possesses California-issued licenses it is obligated to comply with all licensing requirements; and that "Congress has not vested in the [OCC] to the exclusion of the states, the power to control or regulate operating subsidiaries of national banks."[1] (Commissioner's Opp'n to OCC's Amicus Br. at 2.) The Commissioner concedes "it is undisputed that the OCC has exclusive regulatory authority over Wells Fargo, a national bank." (Opp'n to Mot. at 2, n.1.)

The motion was argued March 10, 2003.[2]

### Background

Wells Fargo is a federal national bank organized under the National Bank Act. (Pls.' Memo. of P. & A. in Support of Mot. for Prelim. Inj. at 3; Decl. of Stumpf in Support of Prelim Inj. ¶ 2.) WFHMI is a wholly owned operating subsidiary of Wells Fargo. (Pls.' Memo. of P. & A. at 3; Decl. of Moskowitz Ex. 1.) WFHMI is licensed to engage in real estate lending activities under the California Residential Mortgage Lending Act ("the RMLA") and the California Finance Lenders Law ("the CFLL"). (Decl. of Burns ¶¶ 5, 7, Ex. 3; Decl. of Agbonkpolar ¶ 4; Decl. of Wissinger ¶¶ 5, 7.)

---

* The judge directed his staff to provide a copy of this Order to the parties and to the Office of the Comptroller of the Currency via facsimile transmission no later than 4:30 p.m. on March 10, 2003, so they could be apprized of its contents prior to official service. Nothing shall be faxed to the chambers' fax number absent the express advance approval of the judge.

1. The Commissioner argues there is no credible evidence that WFHMI is an operating subsidiary. However, an OCC letter dated October 16, 2001, "confirms that [WFHMI] is

an operating subsidiary of Wells Fargo Bank, N.A." (Decl. of Moskowitz Ex. 1.)

2. The OCC appeared through counsel and was allowed to argue at the hearing. The Order filed February 19, 2003, granted the OCC's request "to appear amicus curiae in this action so it could 'present oral argument' and have considered the Memorandum Amicus Curiae of the Office of the Comptroller of the Currency in Support of Plaintiffs' Motion for a Preliminary Injunction filed on February 14, 2003."

Following several regulatory examinations, the Commissioner demanded on December 4, 2002, that WFHMI conduct an audit of its residential mortgage loans made in California during 2001 and 2002. (Decl. of Burns ¶ 15, Ex. 7.) This required audit was to identify; all loans where per diem interest was charged by WFHMI in violation of California Financial Code § 50204(*o*), those consumers entitled to a refund, and instances of understating finance charges in violation of the Truth in Lending Act and California Financial Code §§ 50204(i)(j) and (k). (Decl. of Burns Ex. 7.) WFHMI responded to the Commissioner's demand for an audit in a letter dated January 22, 2003, asserting because it is an operating subsidiary of a national bank it is subject to the exclusive federal regulation and supervision of the OCC; however, it proposed an alternate audit to accommodate the Commissioner's concerns. (Decl. of Burns Ex. 9.) The Commissioner demanded compliance. Subsequently, Plaintiffs commenced this federal lawsuit against the Commissioner on January 27, 2003. On February 4, 2003, the Commissioner instituted proceedings to revoke WFHMI's licenses issued under the RMLA and the CFLL. (*Id.* ¶ 22; Decl. of Wissinger Ex. 1, Ex. 2.)

### Preliminary Injunction Standards

 To prevail on the motion for a preliminary injunction, each Plaintiff must demonstrate either: "(1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *Int'l Jensen, Inc. v. Metrosound*

*U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993). "Each of these two formulations requires an examination of both the potential merits of the asserted claims and the harm or hardships faced by the parties." *Sammartano v. First Judicial Dist. Court, in and for County of Carson City,* 303 F.3d 959, 965 (9th Cir.2002). "The alternative standards are not separate tests but the outer reaches of a single continuum," *Int'l Jensen, Inc.,* 4 F.3d at 822 (quotations and citations omitted), "in which the required degree of irreparable harm increases as the probability of success decreases." *Sammartano,* 303 F.3d at 965. When the action involves the public interest, "the district court must also examine whether the public interest favors the plaintiff." *Id.*

### Discussion

Plaintiffs argue the Commissioner's attempt to enforce the RMLA and the CFLL against WFHMI runs afoul of the National Bank Act. Plaintiffs contend this Act grants the OCC the exclusive authority to exercise visitorial powers over national banks and their operating subsidiaries; therefore, WFHMI is not required to hold a license under the RMLA or the CFLL to engage in residential mortgage lending and servicing business in California. (Pls.' Memo. of P. & A. at 16–17.) The OCC's amicus curiae brief agrees with Plaintiffs' position, stating that "in its capacity as administrator of the national banking system ... [and] pursuant to 12 U.S.C. § 484 and federal regulations, the OCC has exclusive 'visitorial' power over national banks and their operating subsidiaries except where federal law specifically provides otherwise."[3] (OCC Amicus Br. at

---

**3.** The OCC explains "the term 'visitorial' powers as used in section 484 generally refers to the power of the OCC to 'visit' a national bank to examine its activities and its observance of applicable laws, and encompasses any

examination of a national bank's records relative to the conduct of its banking business as well as any enforcement action that may be undertaken for violations of law." (OCC Amicus Br. at 2–3.) 12 C.F.R. § 7.4000(a)(2)

2.) The Commissioner counters that the OCC seeks to exceed its visitorial powers over national banks by unlawfully expanding its jurisdiction to include operating subsidiaries of national banks. (Def.'s Memo. of P. & A. at 13–14.)

*National Bank Act*

■ National banks are created and governed by the National Bank Act. 12 U.S.C. § 21 *et seq.* The National Bank Act was enacted to "facilitate ... 'a national banking system,'" *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314–15, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978)(quoting Cong, Globe 38th Cong. 1st Sess., 1451(1864)), and "to protect national banks against intrusive regulation by the States." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561 (9th Cir.2002). The National Bank Act provides that such banks shall have power

> [t]o exercise...all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes....

12 U.S.C. § 24(Seventh). The United States Supreme Court stated that the National Bank Act has charged the Comptroller with the supervision of the Act, and that the Comptroller bears "primary responsibility for surveillance of 'the business of banking' authorized by § 24 (Seventh)." *NationsBank of North Carolina,*

*N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995); *see* 12 U.S.C. § 1, 26–27, 481. The United States Supreme Court held that the " 'business of banking' is not limited to the enumerated powers in § 24 Seventh and that the Comptroller therefore has discretion to authorize activities beyond those specifically enumerated. The exercise of the Comptroller's discretion, however, must be kept within reasonable bounds." *NationsBank of North Carolina, N.A.,* 513 U.S. at 258 n. 2, 115 S.Ct. 810.

The OCC-promulgated regulation regarding the exercise of visitorial powers over national banks provides:

> Only the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks except as provided in paragraph (b) of this section. State officials may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or prosecuting enforcement actions, except in limited circumstances authorized by federal law. However, production of a bank's records (other than non-public OCC information under 12 CFR. part 4, subpart C) may be required under normal judicial procedures.

12 C.F.R. § 7.4000.

At the March 10 hearing, the Commissioner argued that the OCC does not have exclusive visitorial powers over WFHMI because nothing in the National Bank Act authorizes the OCC to exercise this exclu-

---

provides that visitorial powers include: "examination of a bank;" "inspection of a bank's books and records;" "regulation and supervision of activities authorized or permitted pursuant to federal banking law; and" "enforcing compliance with any applicable federal or state laws concerning those activities." 12

U.S.C. § 484(a) proscribes "No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress...."

sive authority. Rather, the Commissioner asserted, at most the OCC has concurrent visitorial powers over WFHMI. The Commissioner further argued that should the Court find that 12 C.F.R. § 7.4006 provides the OCC with exclusive visitorial powers over WFHMI, since that regulation did not become effective until August 2001, it has no preemptive effect on the Commissioner's ability to exercise visitorial powers over WFHMI before its enactment. The OCC disagrees, arguing that the Commissioner's position violates the Congressional enactment in 12 U.S.C. § 484(a), and the intent of 12 C.F.R. § 7.4006.

*Operating Subsidiaries*

The OCC asserts that "[p]ursuant to their authority under 12 U.S.C. § 24 (Seventh) to exercise 'all such incidental powers as shall be necessary to carry on the business of banking,' national banks have long used separately incorporated entities to engage in activities that the bank itself is authorized to conduct. [Such authority] has been expressly recognized for nearly 40 years." (OCC Amicus Br. at 11–12.)

The Operating Subsidiary Rule, codified at 12 C.F.R. § 5.34, regulates the authority of national banks to engage in activities through operating subsidiaries. "A national bank may conduct in an operating subsidiary activities that are permissible for a national bank to engage in directly either as part of, or incidental to, the business of banking, as determined by the OCC, or otherwise under other statutory authority...." 12 C.F.R. § 5.34(e)(1). Section 5.34(e)(3) provides that "[a]n operating subsidiary conducts activities authorized under this section pursuant to the same authorization, terms and conditions that apply to the conduct of such activities by its parent national bank." 12 C.F.R. § 7.4006 provides that "[u]nless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank."

■ At the March 10 hearing, the Commissioner pressed his position that no provision of the National Bank Act grants national banks authority to own or establish operating subsidiaries or to conduct their lending activities through such subsidiaries. The OCC counters that it has interpreted the language of 12 U.S.C. § 24 (Seventh), which authorizes national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking," as authorizing national banks through the OCC to use subsidiaries to conduct banking business. "Incidental powers [in § 24 (Seventh) ] include activities that are 'convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act.'" *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 562 (9th Cir.2002) (citations omitted). The OCC's recognition of national banks' authority to conduct authorized banking business through subsidiaries dates back to 1966. At that time, the OCC issued rules permitting national banks to

acquire and hold the controlling stock interest in a subsidiary operations corporation.... A subsidiary operations corporation is a corporation the functions or activities of which are limited to one or several of the functions or activities that a national bank is authorized to carry on.

\* \* \* \* \* \*

[T]he authority of a national bank to purchase or otherwise acquire and hold stock of a subsidiary operations corporation may properly be found among 'such incidental powers' of the bank 'as shall be necessary to carry on the business of banking,' within the meaning of 12

U.S.C. 24(7), or as an incident to another Federal banking statute which empowers a national bank to engage in a particular function or activity.... The visitorial powers vested in this Office are adequate to ascertain compliance by bank subsidiaries with the limitations and restrictions applicable to them and their parent national banks.

Acquisition of Controlling Stock Interest in Subsidiary Operations Corporation, 31 Fed.Reg. 11,459 at 11,459–60 (Aug. 31, 1966).

Plaintiffs and the OCC also argue that the Gramm–Leach–Bliley Act ("GLBA") acknowledges national banks' authority to conduct banking business through operating subsidiaries. *See* 12 U.S.C. § 24a. The GLBA defines a financial subsidiary as something "other than a subsidiary that ... engages solely in activities that national banks are permitted to engage in directly and are conducted subject to the same terms and conditions that govern the conduct of such activities by national banks...." *Id.* § 24a(g)(3). The Commissioner disputes the OCC's position on the GLBA, relying on a Report of the Senate Committee on Banking, Housing, and Urban Affairs, which he argues reveals Congress did not recognize operating subsidiaries in the GLBA. (Commissioner's Opp'n to Amicus Br. at 5.) However, that Report specifically addresses national banks' authority to conduct authorized banking business through operating subsidiaries:

For at least 30 years, national banks have been authorized to invest in operating subsidiaries that are engaged only in activities that national banks may engage in directly. For example, national banks are authorized directly to make mortgage loans and engage in related mortgage banking activities. Many banks choose to conduct these activities through subsidiary corporations. Nothing in this legislation is intended to affect the authority of national banks to engage in bank permissible activities through subsidiary corporations, or to invest in joint ventures to engage in bank permissible activities with other banks or nonbank companies.

S.Rep. No. 106–44, at 6 (1999).

Finally, operating subsidiaries and national banks have been treated as equivalents in court decisions determining whether a particular activity was permissible for a national bank. *See NationsBank of North Carolina, N.A.,* 513 U.S. at 254, 115 S.Ct. 810 (brokerage subsidiary acting as an agent in the sale of annuities); *Marquette Nat'l Bank of Minneapolis v. First of Omaha Service Corp.,* 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978) (credit card subsidiary); *American Ins. Ass'n v. Clarke,* 865 F.2d 278 (D.C.Cir.1988) (subsidiary offering municipal bond insurance); *M & M Leasing Corp. v. Seattle First Nat'l Bank,* 563 F.2d 1377 (9th Cir.1977) (motor vehicle leasing by subsidiary). Therefore, the OCC's interpretation that national banks are authorized to conduct permissible banking business activities through operating subsidiaries appears to be reasonable and entitled to deference.

As stated in *First Nat'l Bank of Eastern Arkansas v. Taylor,* 907 F.2d 775, 777–78 (8th Cir.1990),

the Supreme Court has made clear that the Comptroller's interpretation of the National Bank Act must be given "great weight":

"It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these

laws." The Comptroller's determination as to what activities are authorized under the National Bank Act should be sustained if reasonable.

(Citations omitted); *see also NationsBank of North Carolina, N.A.,* 513 U.S. at 256–57, 115 S.Ct. 810 (same).

### OCC's Exclusive Visitorial Powers over Operating Subsidiaries

■ Notwithstanding the likelihood that Plaintiffs will prevail on their claim that WFHMI has the status of an operating subsidiary of a national bank, the Commissioner contends he has joint visitorial powers over WFHMI at least prior to August 2001. The OCC counters, "Because federal law prohibits the [Commissioner] from exercising visitorial powers over a national bank engaged in real estate lending pursuant to federal law, the [Commissioner] may not exercise visitorial power over the national bank conducting that activity through an operating subsidiary licensed by the OCC, absent federal law dictating a contrary result." (OCC Amicus Br. at 14.) The OCC explained in its interpretive letter to the Commissioner, dated February 11, 2003, the following:

> As an operating subsidiary of a national bank, WFHMI is subject to ongoing supervision and examination by the OCC in the same manner and to the same extent as the [Wells Fargo] Bank.... [P]ursuant to 12 U.S.C. § 484, and 12 C.F.R. § 5.34(e)(3) and 7.4006, the OCC has exclusive visitorial authority over national banks and their operating subsidiaries except where *Federal* law provides otherwise. This authority pertains to activities expressly authorized or recognized as permissible for national banks under Federal law or regulation, or by OCC issuance or interpretation, including the content of those activities and the manner in which, and standards whereby, those activities are conducted.

> As a result, States are precluded from examining or requiring information from national banks or their operating subsidiaries or otherwise seeking to exercise visitorial powers with respect to national banks or their operating subsidiaries in those respects. Thus, Federal law precludes examination of WFHMI by the [Commissioner].

(*Id.* Ex. 1 at 1–2.) Because the OCC's construction of the National Bank Act is articulated in an amicus brief and an interpretive letter "does not make it 'unworthy of deference.'" *Bank of America,* 309 F.3d at 563 n. 7. The OCC's amicus brief and interpretive letter appear to be "both persuasive and consistent with the National Bank Act and OCC regulations and thus at least 'entitled to respect.'" *Id.*

During the March 10 hearing, OCC pointed to the Third Circuit decision in *Nat'l State Bank, Elizabeth, N.J. v. Long,* 630 F.2d 981 (3d Cir.1980), as support for its position that the OCC has exclusive visitorial powers over WFHMI whether or not the enforcement of California law is involved. *Long* reveals, "Questions about the applicability of state legislation to national banks must be distinguished from the related inquiry of who is responsible for enforcing national bank compliance." *Long,* 630 F.2d at 987–88. In light of the respect that is to be given to the OCC's construction of the National Bank Act articulated in its brief and its interpretive letter where it opines it has exclusive visitorial power over WFHMI as a subsidiary of a national bank, Plaintiffs are likely to prevail on the merits of their claim that the OCC's recognition of WFHMI's status as an operating subsidiary is all that is needed for it to conduct its residential mortgage lending in California. Accordingly, the Commissioner's argument that he has dual visitorial powers with the OCC is not likely to prevail because allowing the Commissioner to exercise visitorial powers

over WFHMI would appear to "result in unnecessary and wasteful duplication of effort on the part of the bank and the state agency. From that standpoint enforcement exclusivity in the [OCC] is reasonable and practical." *Id.* at 988.

The foregoing discussion reveals that Plaintiffs have shown probable success on the merits of their claim that WFHMI is a wholly-owned operating subsidiary of Wells Fargo licensed by the OCC to engage in real estate lending activities in California, and that therefore "the National Bank Act preempts the Commissioner's authority" to prohibit WFHMI from doing this business in California and from exercising visitorial power over Plaintiffs. *First Nat'l Bank of Eastern Arkansas,* 907 F.2d at 778.

### Hardships Faced by the Parties

Plaintiffs contend they will suffer irreparable harm if the Commissioner is allowed to exercise visitorial powers over them. According to Plaintiffs,

> The California residential mortgage market accounts for a significant share of WFHMI's annual loan production volume, and generates hundreds of millions of dollars each year in gross revenue for WFHMI.... Plaintiffs know of no way that they can recover these revenues if they ultimately succeed on the merits of this action but are impeded in their business activities by the Commissioner's actions to stop WFHMI from continuing its business operations in California for some period of time before they obtain a favorable final decision from this Court.

(Pls.' Memo. of P. & A. at 21.) Plaintiffs argue that Wells Fargo will also be irreparably harmed because the Commissioner's actions "threaten to disrupt substantially the majority of the Bank's residential mortgage lending and servicing business in California, which the Bank undertakes through WFHMI." (*Id.*) In addition,

Plaintiffs estimate that the manual audit demanded by Defendant of more than 300,000 mortgage loan files will cost WFHMI "at least $60 per loan file (including file retrieval and manual file review by specially trained outside personnel), for a total audit cost of at least $18 million." (Pls.' Memo. of P. & A. at 21–22.) Plaintiffs contend such costs cannot be recovered. (*Id.* at 22.)

### Public Interest

The public interest also favors Plaintiffs' position because they have a probability of succeeding on their position that since Wells Fargo is a national bank and WFHMI is an operating subsidiary of a national bank they are subject to the exclusive visitorial power of the OCC. "Because national banks are considered federal instrumentalities, states may neither prohibit nor unduly restrict their activities." *First Nat'l Bank of Eastern Arkansas,* 907 F.2d at 778. Further, Plaintiffs have shown the possibility of irreparable injury if relief is not granted. Moreover, a serious federal and state regulatory dispute is involved and the balance of hardships tips sharply in Plaintiffs' favor on the issue that the National Bank Act prohibits the Commissioner from exercising visitorial powers over Plaintiffs. Therefore, the Commissioner is preliminarily enjoined from exercising visitorial powers over Plaintiffs.

### Revocation of California Issued Licenses

WFHMI has not shown, however, a probability of success on the merits of its claim that the Commissioner should be enjoined from revoking the California licenses issued under the RMLA and the CFLL. As stated in the ruling on Plaintiffs' motion for a temporary restraining order, filed on March 6, 2003:

Plaintiffs have not shown that California's licensing revocation proceeding must be stayed while Plaintiffs litigate their claims in federal court that WFHMI does not have to possess California licenses to do the national banking business it does in California. . . .

\* \* \* \* \* \*

It would be ironic for an injunction to issue in such circumstances since WFHMI could have avoided the harm it contends it will suffer had it chosen to comply with the requirements of the California licenses it possesses. . . .

Although it is unclear why WFHMI subjected itself to the Commissioner's regulatory authority by virtue of having become a California licensee, this does not seem to have an effect on WFHMI's right to conduct federally permissible banking activities authorized by the OCC. *See ANR Pipeline Co. v. Iowa State Commerce Com'n,* 828 F.2d 465, 467–68 (8th Cir.1987) (revealing that even though the Pipeline Company unnecessarily obtained a state permit, it could continue doing work on an interstate gas pipeline under federal authority notwithstanding the Company's violation of the state permit's requirement).

### Conclusion

Therefore, the Commissioner is preliminarily enjoined from exercising visitorial powers over Plaintiffs or from otherwise preventing WFHMI from operating in California; however, the portion of Plaintiffs' motion seeking to preliminarily enjoin the Commissioner from revoking WFHMI's California issued licenses is denied.

IT IS SO ORDERED.