ALDISERT, Circuit Judge.
This appeal by Oregon Health Sciences University (OHSU) from an Order by the United States District Court for the District of Oregon denying Appellant’s motion to reduce a jury verdict requires us to *917 decide whether an award under Oregon’s Whistleblower Law, Or.Rev.Stat. § 659A.203 (2001), is limited to $200,000 as set forth in the Oregon Tort Claims Act (OTCA), Or.Rev.Stat. § 30.270(1) (2001). We hold that the limitation applies and, therefore, reverse the judgment of the district court.
We also decide in a cross-appeal brought by John Rabkin, M.D., that the district court did not abuse its discretion by not reinstating him as director of OHSU’s Liver Transplant Program.
The United States District Court for the District of Oregon had jurisdiction in the underlying action pursuant to 28 U.S.C. § 1331 based on Dr. Rabkin’s First Amendment claim under 42 U.S.C. § 1983. Moreover, the district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims related to the underlying action.
I.
Dr. Rabkin is a liver transplant surgeon who contends that after he raised concerns about patient well-being under a fellow physician’s care, his employer, OHSU, retaliated against him by removing him as director of the Liver Transplant Program. This case centers upon hostilities that transpired between Dr. Rabkin and other physicians at the hospital.
Dr. Rabkin was originally recruited to serve as director of OHSU’s Liver Transplant Program in 1991, and he negotiated the terms of his employment agreement with Clifford W. Deveney, M.D., and Donald Trunkey, M.D. The agreement invested in Dr. Rabkin fiscal and administrative autonomy over the Liver Transplant Program, and provided that the Program would not be subject to the oversight of Richard A. Crass, M.D., head of the General Surgery Division.
From the outset, all parties acknowledged that the Liver Transplant Program required at least three surgeons to staff adequately all of its activities. Dr. Rabkin recruited and hired Matthew Reed, M.D., in 1991 and Susan L. Orloff, M.D., in 1995. Dr. Reed left the program in 1996 with encouragement from Dr. Rabkin, who did not have confidence in Dr. Reed’s surgical abilities.
Soon thereafter, Drs. Rabkin and Orloff began having difficulties with each other. By the summer of 2000, the tension between the two spilled into the operating room, leading them to stop assisting one another with surgeries. Moreover, hostility brewed between Drs. Rabkin and Crass, head of the General Surgery Division, as a result of Dr. Rabkin’s declination to share more of the Liver Transplant Program’s fiscal resources generated by outside sources with the General Surgery Division.
Meanwhile, Dr. Rabkin had been promoted to Associate Professor of Surgery on July 1, 1998. Eighteen months later, on December 28, 1999, Dr, Trunkey informed Dr. Rabkin that his academic appointment would not be renewed. On the same day, Dr. Rabkin learned from his staff that Dr. Trunkey had taken steps to remove him as director of the Liver Transplant Program and that Dr. Orloff had been appointed acting director. Dr. Trun-key’s decision was based on Dr. Rabkin’s failure to treat Dr. Orloff “in a collegial manner” and Dr. Rabkin’s “defiance of Dr. Crass in his attempt to correct financial shortfalls within the Division of Surgery.”
Dr. Rabkin appealed to Joseph D. Bloom, M.D., dean of the Medical School, who appointed a committee to review the Liver Transplant Program. Effective July 1, 2000, Dr. Rabkin was reinstated as director under the supervision of John Barry, M.D., head of the Division of Abdomi *918 nal Organ Transplantation, and he no longer supervised Dr. Orloff.
On July 20, 2000, Dr. Trunkey reported to Drs. Bloom and Barry that Dr. Orloff was still unhappy with the new arrangement and was exploring other opportunities. If she left, he wrote, OHSU would lose a “potentially excellent academic surgeon” and be left with the “sociopath” Dr. Rabkin. Nonetheless, Dr. Trunkey recommended Dr. Rabkin for tenure track in January 2001, and his recommendation was followed.
In fall 2000, before he was placed on the tenure track, Dr. Rabkin began reporting to the OHSU administration his concerns that Dr. Orloff s patient mortality rate was double his own. In February 2001, at the request of Dr. Barry, Dr. Orloff voluntarily agreed to stop doing liver transplants until an outside consultant reviewed the Liver Transplant Program. Dr. Barry retained Ruud A.F. Krom, M.D., a liver transplant surgeon from the Mayo Clinic, to conduct the review. Dr. Krom visited OHSU on March 14 and 15, 2001, and thereafter delivered a 10 page report concluding that the Liver Transplant Program “requires a change in philosophy and a short-term investment to create a solid core of a multidisciplinary transplant team.”
One month later, Dr. Rabkin was informed that he was no longer director of the Liver Transplant Program and that a third transplant surgeon would be recruited as the new director. On May 26, 2001, Dr. Barry offered the directorship to John Ham, M.D. Dr. Rabkin remained on OHSU’s medical school faculty and continued as director of the Organ Procurement Organization.
On May 18, 2001, Dr. Rabkin filed a grievance with OHSU’s Affirmative Action and Equal Opportunity Department, contending that OHSU had retaliated against him for disclosing his concerns about Dr. Orloffs poor surgical outcomes. The department dismissed his grievance as unsubstantiated on July 5, 2001.
Dr. Rabkin filed this action in district court on June 21, 2001, asserting claims under the First Amendment, 42 U.S.C. § 1983, and Oregon’s Whistleblower Law, former Or.Rev.Stat. § 659.510(renumbered as Or. Rev. Stat § 659A.203 (2001)), requesting damages and reinstatement. Following a three-day trial, the jury found in favor of OHSU on the First Amendment claim, but Dr. Rabkin prevailed on his claim that OHSU had violated Oregon’s Whistleblower Law. The jury awarded Dr. Rabkin $500,000 in damages. OHSU then moved to reduce the amount of the judgment to $200,000 based on the OTCA, which limits recovery for tort claims brought against the government to $200,000. The district court denied OHSU’s motion. Additionally, the district court rejected Dr. Rabkin’s claim for equitable relief in the form of reinstatement for directorship of OHSU’s Liver Transplant Program.
The timely appeal and cross-appeal followed. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We “review de novo a district court’s determination of state law.” Salve Regina Coll. v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). “When de novo review is compelled, no form of appellate deference is acceptable.” Id. at 238, 111 S.Ct. 1217.
The OTCA provides a limit on a government tortfeasor’s liability:
Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties *919 on claims within the scope of ORS 30.260 to 30.300 shall not exceed:
(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000.
Or.Rev.Stat. § 30.270(1) (2001).
The OTCA defines “tort”:
“Tort” means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy.
Id, § 30.260(8) (2001).
Oregon’s Whistleblower Law provides: [I]t is an unlawful employment practice for any public employer to:
(b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
(B) ... substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision[.]
Former Or.Rev.Stat. § 659.510 (1999) (renumbered as Or.Rev.Stat. § 659A.203 (2001)).
The Whistleblower Law’s relevant remedy provision provided that:
an employee alleging a violation of ORS 659.510 may bring a civil action for appropriate injunctive relief or damages, or both, within 90 days after the occurrence of the alleged violation. The action may be filed in the circuit court of the county in which the alleged violation occurred, or the county in which the complainant resides. If damages are awarded, the court shall award actual damages or $250, whichever is greater.
Former Or.Rev.Stat. § 659.530 (1999) (emphasis added).[1]
Thus, the issue is joined. We must decide if the OTCA’s limit on a government tortfeasor’s liability applies to claims brought under the remedy provision of the 1999 Whistle-blower Law.
The district court relied exclusively on the reasoning set forth in Draper v. Astoria School District No. 1C, 995 F.Supp. 1122 (D.Or.1998), holding that retaliatory whistle-blower claims under Or.Rev.Stat. § 659.510 are exempt from the OTCA’s damage limit. In Draper, the district court concluded that by providing that “the court 'shall’ award actual damages or $250, whichever is greater,” the Whistle-blower Law’s remedies are “mandatory,” and applying the OTCA to whistleblower claims would contradictorily limit the mandatory actual damage award to $200,000. 995 F.Supp. at 1140 (emphasis added). Noting that “the Whistleblower Law is specifically directed at public employers” and that “[t]here is no mention of the damages cap under the OTCA,” the court concluded that the Whistleblower Law and the OTCA are in “direct conflict”:
*920 There is no principled way to reconcile these conflicts without assuming that in enacting the Whistle-blower Law, the Oregon Legislature — unlike Dr. Seuss’s Horton the Elephant — did not say what it meant and did not mean what it said. There would be no point in the Legislature creating remedies against a public body with one hand only to take them away with the other. Moreover, had the Legislature intended for whistleblower claims to be subject to the damage cap and other limitations of the OTCA, it could easily have specified such a result.
Id. (footnote omitted). Because the Whis-tleblower Law was enacted after the OTCA and the Whistleblower Law’s remedy provision contains no cross-reference, in Draper the court held that claims under the Whistleblower Law are exempt from the OTCA’s damages limit.
We are persuaded that the district court here erred in adopting this analysis and in rejecting OHSU’s contention that Draper was incorrectly decided in light of decisions by the Oregon Supreme Court and Oregon’s intermediate appellate court.
III.
Our task requires us to pursue two discrete inquiries. We must first decide whether an action under the Oregon Whi-sle-blower Law sounds in tort. If so, we must determine whether the limitation provision of the OTCA directly conflicts with the remedy provision set forth in the later enacted Whistle-blower Law.
We are satisfied that the Oregon Supreme Court, in addressing the reach of the OTCA in the context of an employment discrimination case, outlined a specific road map we must follow in deciding this case. See Griffin ex rel. Stanley v. TriCounty Metro. Transp. Dist. of Or., 318 Or. 500, 870 P.2d 808, 811 (1994). Griffin teaches that we must lay the statute in question, here, the Whistleblower Law, against the precise wording of the OTCA and decide if it comes within the definition of a “tort.” A statutory unlawful employment or civil rights claim is a “tort” within the meaning of the OTCA:
For purposes of the OTCA, a “tort” is “the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, * * * which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy.” ORS 30.260(8) .... [The duty to refrain from unlawful employment practices] is a “legal duty that is imposed by law, other than a duty arising from contract or quasi-contract” within the meaning of ORS 30.260(8).... Accordingly, the unlawful employment practice that was the basis for this action constituted a “tort” within the meaning of the OTCA, and plaintiffs action was therefore subject to the provisions of the OTCA. Cf Urban Renewal Agency v. Lackey, 275 Or. 35, 38, 549 P.2d 657 (1976) (holding that a state agency’s breach of its statutory duty to assist individuals in reestablishing their business was a “tort” within the meaning of the OTCA).

Id.

The statute at issue here, Or.Rev.Stat. § 659A.203(l)(b)(B), imposes a legal duty not to retaliate against an employee for disclosing information that the employee reasonably believes is evidence of a danger to public health and safety. OHSU’s breach of this duty, as found by the jury, resulted in injury to Dr. Rabkin. The Whistleblower Law’s relevant remedy provision, former Or.Rev.Stat. § 659.530 (1999), permits any person claiming to be aggrieved by alleged violations to file a civil action for damages. Because the resemblances of this statute with the statute *921 at issue in Griffin[2] greatly outweigh any differences, the teachings of Griffin constitute an extremely persuasive analogue to the case at bar. See Winoff Indus., Inc. v. Stone Container Corp. (In re Linerboard Antitrust Litig.), 305 F.3d 145, 157 (3d Cir.2002) (“Because a successful analogy is drawn by demonstrating the resemblances or similarities in the facts, the degree of similarity is always the crucial element.”), cert, denied, — U.S.-, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003).
Decisions of Oregon’s intermediate appellate courts are also instructive. In Brinkley v. Oregon Health Sciences University, 94 Or.App. 531, 766 P.2d 1045, 1048-1049 (1988), the court had before it a judgment for unlawful employment practices set forth in Oregon Revised Statute chapter 659 against the same defendant here, and held that the OTCA applied. In Anglin v. Department of Corrections, 160 Or.App. 463, 982 P.2d 547, 554-555 (1999), the court held that the OTCA applied to a plaintiffs employment discrimination action brought under chapter 659 against a state correctional institute. It is beyond cavil that a proper analogy may be drawn between this case and the facts and reasoning set forth in Griffin, Brinkley and Anglin.
Indeed, in the case at bar the district court recognized that “a Whistleblower claim was a ‘tort’ ” under OTCA’s statutory definition. (Op. & Order at 4). The court, however, erred in reasoning that notwithstanding that whistleblower claims are torts, whistleblower remedies are in direct conflict with those set forth in the OTCA, and therefore are “exempt from the OTCA” limit. Id. at 5, 982 P.2d 547.
IV.
We proceed then to the central issue whether the OTCA directly conflicts with the Whistleblower Law’s remedy provision providing that the court “shall award actual damages or $250, whichever is greater.” Former Or.Rev.Stat. § 659.530 (1999) (emphasis added). The court’s duty in interpreting statutory language “is to discern the intent of the legislature.” Portland Gen. Elec. Co. v. Bureau of Labor & Indus., 317 Or. 606, 859 P.2d 1143, 1145 (1993). Because it was the district court’s theory, as reiterated by Dr. Rabkin before us, that the Oregon legislature intended that the Whistleblower Law damages be expressly different from those provided in the OTCA — as it was enacted after the OTCÁ and used the word “shall” — we are required to ascertain that intent.
*922 Under Oregon state law, we must begin our search for the legislature’s intent with the text and context of each statute. Id. at 1146. “[C]ontext ... includes other provisions of the same statute and other related statutes.” Id. It has been said that when the Oregon “ ‘legislature enacts a subsequent statute which is repugnant to or in conflict with a prior statute, but contains no language expressly repealing the prior statute, the prior statute is impliedly repealed.’ ” State ex rel. Huddleston v. Sawyer, 324 Or. 597, 932 P.2d 1145, 1150 (1997) (quoting State v. Shumway, 291 Or. 153, 630 P.2d 796, 800 (1981)). But Oregon courts disfavor repeal by implication. Id. They will strive to harmonize the two statutes when feasible. Id. “The harmony sought ... is not necessarily a perfect symmetry of the statutes dealt with; it is sufficient if we arrive at a construction representing a reasonable consistency between the affected parts.” Lilly v. Gladden, 220 Or. 84, 348 P.2d 1, 6-7 (1959). In Draper, however, the district court took no strides to harmonize the OTCA and the Whistleblower Law.
The reasoning of the district court in Draper, adopted by the district court here, emphasized that the term “shall” in the Whistleblower Law’s remedy provision— which is not in the provisions of chapter 659 at issue in Anglin and Brinkley■— renders it mandatory for the court to award actual damages. Draper, 995 F.Supp. at 1140. The mandatory nature of the Whistleblower Law’s remedy provision, however, does not “directly conflict” with the structure and purpose of the OTCA’s limits. Moreover, that this cause of action was enacted after the enactment of the OTCA does not, without more, show an intention to repeal by implication the OTCA’s import.
We reach the conclusion that these two statutes are in harmony when we recognize that the Oregon courts have interpreted the text and context of the OTCA as limiting a government tortfeasor’s liability and not merely setting a cap on the amount of damages that the government will pay:
Consistent with the statute’s plain language, the Supreme Court has recognized that, when viewed against the backdrop of the government’s sovereign immunity, the OTCA effectively serves as a partial waiver of sovereign immunity. Hale v. Port of Portland, 308 Or. 508, 512-17, 783 P.2d 506 (1989); Espinosa v. Southern Pacific Trans., 291 Or. 853, 864, 635 P.2d 638 (1981). To be sure, the OTCA necessarily limits the amount of damages that an injured party may recover from a government tortfeasor, but it does so only as a necessary consequence of the statute’s limitation on liability. By force of the statute, a claim against a government tortfeasor simply is not viable beyond the specified amounts.
Surface v. Am. Spirit Ins. Cos., 154 Or. App. 696, 962 P.2d 717, 719(1998) (emphasis added); see also Griffin, 870 P.2d at 812-814 (holding that by using the term “liability” which “must refer to the duty or legal responsibility to pay money on a tort claim,” the legislature intended the OTCA limits to include attorney fees and costs).[3] *923 Inasmuch as the OTCA expressly refers to tortfeasor “liability” and the Whistleblower Law expressly refers to “damages,” these two statutes may not be said to be in conflict.
In American Spirit Insurance, the Oregon Court of Appeals faced an issue involving the interplay between the OTCA and Oregon’s Underinsured Motorist statute (UIM), Or.Rev.Stat § 742.504(1)(a), which provides coverage up to the amount one is “legally entitled to recover.” 962 P.2d at 718. The plaintiff suffered injuries in excess of $1 million as a result of a head-on collision with a vehicle driven by a government employee. She recovered $159,042.53 in a civil action for damages, the total amount legally available to her under the OTCA, and subsequently requested UIM coverage for her remaining damages. The dispositive question for the court was whether the OTCA was a limit on liability, thereby establishing the amount the plaintiff was “legally entitled to recover” under the UIM, or if the OTCA was merely a cap on the amount of money that the government will pay in a tort action, thus allowing the plaintiff to recover the difference under the UIM scheme. Id. at 719. Turning to the express terms of the OTCA, the Oregon Court of Appeals concluded that the statute “operates to define the scope of a government tortfeasor’s liability, not just the amount of government funds available to cover that liability,” and thereby held that the plaintiff could not recover more than the $159,042.53 she had already received in her civil action for damages. Id. (emphasis added).
In effect, the OTCA serves as a limited waiver of sovereign immunity, and accordingly it limits the government’s tort liability, not merely as a cap on damages. The underlying purpose of the OTCA concerns the public fisc, as the Oregon Supreme Court has said: “the legislature chose to limit the ‘liability’ of public bodies in order to impose a measure of certainty and to protect the public fisc.” Griffin, 870 P.2d at 815.
That the OTCA limits a government tortfeasor’s liability rather than merely sets a cap on damages is significant here in that actual damages for a tort claim are awarded to a plaintiff only to the extent a tortfeasor is liable. Thus, the “actual damages” that a court “shall” award for tort claims brought pursuant to the Whis-tleblower Law are limited to the “scope of the government tortfeasor’s liability” as set forth in the OTCA. The OTCA and the Whistleblower Law are thereby in harmony and are not in direct conflict. Applying the reasoning of the Oregon courts to this case, actual damages for Dr. Rabkin’s claim against OHSU pursuant to the Whis-tleblower Law may not be awarded in excess of $200,000 by virtue of the OTCA’s limit on the government’s tort liability.
Even if the text of the two statutes could not have been reconciled, we are persuaded that the legislative history of the Whis-tleblower Law clearly reinforces the view that the damages specified in the legisla *924 tion be subject to the OTCA limits. We now examine that history.
V.
As a threshold matter, we deem it significant that the district court in Draper complained that “[t]he parties have not provided this court with any legislative history that may shed light on the legislative intent.” 995 F.Supp. at 1139 n. 11. OHSU has provided a legislative history that describes the relationship between the Whistleblower Law and the OTCA.
In the course of its April 24, 1989, discussion of S.B. 1051, the Senate Labor Committee discussed both the prohibition against punitive damages and the limit on liability in cases against public bodies, and acknowledged that “you would have to exempt yourself from that,” and that “we might have a hard time rocking that boat.” Sen. Labor Comm., Work Session S.B. 1051, Tape 118, Side A, Counter 467-477, Tape 117, Side B, Counter 020 et seq. (Ap.24, 1989). The members of the committee discussed the possibility of a provision for punitive damages, but decided that this result would require an exemption to the current law, id. at Tape 117, Side B, Counter 030-060, and ultimately decided instead to, in the words- of Senator Larry Hill, “include everything that’s currently allowed by law against a public body.” Id. at Counter 030-065.
Further, the committee members determined that it would not be necessary to make an explicit reference to the OTCA, Or. Rev. Stat § 30.270, in the Whistleblower Law:
ANNETTE TALBOTT [committee administrator]: You want, you can’t do punitives. So you want compensatory damages, or $200, whichever is greater, or do you just want compensatory damages?
SEN LARRY HILL: ... actual damages, I’d like compensatory damages, I’d like special damages.
* * * *
CHAIR KERANS: As a Section 9.
SEN. HILL: ... to the extent allowed by 30.270. [OTCA].
TALBOTT: I don’t think ... reference.
SEN. HILL: We don’t need to reference it?
TALBOTT: No, that’s for any public body.
SEN. HILL: That applies to any public body.
TALBOTT: Mm hmm.
Sen. Labor Comm., Work Sess. S.B. 1051, Tape 117, Side B, Counter 085 et seq. (Ap.24, 1989) (emphasis added). The conclusion that the legislature intended that the OTCA’s limits apply to the Whistle-blower Law is supported by the legislative history in apparent agreement that no specific reference in ipsis verbis to the OTCA was necessary because the Whistleblower legislation was to apply to “any public body.” It is clear the legislature had the public fisc in mind when promulgating the Whistleblower Law, as it did when enacting the OTCA. See Griffin, 870 P.2d at 815(“the legislature chose to limit the ‘liability’ of public bodies in order to impose a measure of certainty and to protect the public fisc”).
We therefore conclude that the argument that the legislature — without saying so- — -intended to repeal the OTCA provision for purposes of the Whistleblower Law is both contrary to Oregon law requiring the harmonizing of statutes where possible and the legislative history of the Whistleblower Law.
For the foregoing reasons, we conclude that claims brought under the Whistle- *925 blower Law are torts subject to the OTCA and that whistleblower remedies are not directly in conflict with the OTCA. Dr. Rabkin’s jury award of $500,000 under the Whistleblower Law must accordingly be remitted to $200,000 as set forth in the OTCA. We therefore reverse the judgment of the district court in the appeal brought by OHSU. We now turn to Dr. Rabkin’s cross-appeal.
VI.
,We review a district court’s ruling regarding equitable reinstatement for an abuse of discretion. Gotthardt v. Nat’l R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir.1999); see also Cancellier v. Federated Dep’t Stores, 672 F.2d 1312, 1319 (9th Cir.1982) (holding that reinstatement in an age discrimination case “lies within the discretion of the trial court after careful consideration of the particular facts of the case”). “The district court abuses its discretion when its equitable decision is based on an error of law or a clearly erroneous factual finding.” United States v. Washington, 157 F.3d 630, 642 (9th Cir. 1998). “An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.” Int’l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir.1993) (internal quotations and citation omitted).
The question on cross-appeal is whether the trial court abused its discretion in denying Dr. Rabkin the additional remedy of reinstatement to a leadership position that he held at the discretion of his superiors at OHSU. We conclude there was no abuse.
The district court correctly took into consideration that Dr. Rabkin’s appointment would be for a one-year term renewable solely at the discretion of the administration, and that the remedy would therefore “be temporary, at best.” (Op. & Order at 10). This is a proper consideration in light of Beal v. Gilchrist Timber Co., 64 Or.App. 300, 667 P.2d 575, 577(1983), in which the Oregon Court of Appeals ruled that the plaintiff was not entitled to reinstatement when her position was “temporary.”
Dr. Rabkin cites Tadsen v. Praegitzer Industries, Inc., 324 Or. 465, 928 P.2d 980 (1996), for the proposition that as an at-will employee he is entitled to front pay. In Tadsen, the court explained that “[a]t-will employment may be a factor that bears on whether the proof [of front pay damages] is sufficient in a particular case, but the right to terminate someone’s employment does not establish as a matter of law that an employee cannot prove the existence of front pay damages.” - Id. at 983. That an at-will employee may offer proof of how long he would have been in the position, however, does not mean he is entitled to reinstatement. First, front pay and reinstatement are two different matters, which explains why front pay is often awarded where reinstatement is impractical. Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1347(9th Cir.1987) (explaining it is the court’s decision to order “reinstatement or, in the alternative, to award front pay” (emphasis added)). Second, reinstatement is an equitable remedy within the discretion of the trial judge. Cancellier, 672 F.2d at 1319. We find that the district court’s decision to deny reinstatement here is supported by the record, and thus it acted well within its discretion.
As the district court stated, “[t]he Ninth Circuit has recognized that reinstatement may be inappropriate ‘where discord and antagonism between the parties [make] it preferable to fashion relief from other available remedies.’ ” (Op. & Order at 8) (quoting Cancellier, 672 F.2d at 1319).
*926 The district court devoted two entire pages (Op. & Order at 10-11) setting forth the facts that it relied upon in reaching its conclusion “that there has been a complete breakdown in [the OHSU Administrators’] relationship with the plaintiff as a Program Director and that plaintiffs reinstatement would cause chaos in the department.” (Id. at 11). The district court explained:
The most persuasive testimony on the difficulty that plaintiffs reinstatement would pose was elicited from Dr. Roy Magnusson, an Associate Dean and the OHSU Medical Director. Dr. Magnus-son explained that it is extremely rare to find any consensus in academia for anything, but that the overwhelming consensus from the OHSU administration was that the plaintiff was not fit for the role of a Director. Magnusson explained that while he and other long-term administrators could support the plaintiff, they had “no confidence” in his abilities as a leader given the high degree of rancor, financial disputes and poor team morale that existed when plaintiff was the Director previously.
(Op. & Order at 10). The district court emphasized that this case presents a “highly unique factual setting” that renders reinstatement particularly improper:
OHSU does not employ hundreds of Liver Transplant surgeons and there is only one Director of the Liver Transplant program. The work performed is highly complex and specialized and is, literally, a matter of life and death. The confidence of hospital administration and the support staff is absolutely critical to the smooth functioning of the program.
(Op. & Order at 11). Moreover, Dr. Orloff and Dr. Ham testified that they would likely resign if Dr. Rabkin were reinstated, leaving the program understaffed with only one surgeon. Furthermore, reinstating Dr. Rabkin would displace Dr. Ham, an innocent employee.
This is not a case where the plaintiff is left without employment. Dr. Rabkin retained his position as a surgeon, his professorship and his salary. What he has lost is a position that he held at the discretion of his OHSU superiors. Moreover, as the district court noted, Dr. Rabkin’s rights have been adequately vindicated by the jury award as compensation for what it found to be illegal treatment by OHSU. Given that Dr. Rabkin’s directorship position was temporary and that the record supports OHSU’s concerns regarding the smooth functioning of the Liver Transplant Program, the district court did not exceed the permissible bounds of its discretion in denying Dr. Rabkin the additional remedy of reinstatement.
We REVERSE the judgment in the appeal. We AFFIRM the judgment on the cross-appeal.

. Dr. Rabkin filed this suit when the 1999 version of the Whistleblower Law was in effect. The above quoted text is no longer in the Whistle-blower Law's remedy provision. Or.Rev.Stat. § 659A.215 (2001).

. Or.Rev.Stat. § 659.425(1) (1993) provided:
For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:
(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;
(b) An individual has a record of a physical or mental impairment; or
(c) An individual is regarded as having a physical or mental impairment.
In Griffin, the plaintiff claimed that Tri-Met had discriminated against him because he was infected with Human Immunodeficiency Virus (HIV), the virus that causes AIDS. He sought attorney fees and costs under Or.Rev. Stat. § 659.121(2) (1993), which provided in part:
Any person claiming to be aggrieved by alleged violations of ORS ... 659.415 to 659.435 ... may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages....

. In Griffin, the court applied the 1985 version of the OTCA, which provided: "Liability of any public body ... [for tort claims] shall not exceed ... $100,000 to any claimant....” Or.Rev.Stat. § 30.270(1) (1985). In 1987 the Oregon legislature amended the OTCA to its current version: "Liability of any public body ... [for tort claims] shall not exceed: ... $100,000 to any claimant as general and special damages ....” Or. Laws 1987, ch. 915, § 13 (amendments emphasized). In 1999, the Oregon Court of Appeals faced the issue of whether attorney fees are included in the liability limit of the OTCA's amended version. *923 Anglin, 982 P.2d at 555. The court held that "general and special damages" within the meaning of the OTCA's liability limit do not include attorney fees, explaining: “Defendants cite no authority for the proposition that the terms ‘general damages' or ‘special damages’ as used in this statute — or in any other statute, or at common law, or in any dictionary definition, for that matter — include attorney fee awards.” Id. This reasoning, however, is not applicable here, as the amount at issue in this case is in the form of damages, not attorney fees. Inasmuch as the OTCA principally concerns the government’s tort liability, which it limits in the form of damages, and the Whistleblower Law subjects the government to tort liability in the form of damages, these two statutes are in harmony.